## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LILITH LACAVA, f/k/a ALEK MICKLES,
and ERIN OWENS,

       Plaintiffs,

v.                                                                        Case No. 8:22-cv-02422-WFJ-TGW

LINDA OLEKSYK,

       Defendant.

_____/

## <u>ORDER</u>

This matter comes before the Court on Lilith LaCava's and Erin Owens's (collectively, "Plaintiffs") Motion for Summary Judgment (Dkt. 29) and Linda Oleksyk's ("Defendant") Motion for Summary Judgment (Dkt. 28). The parties filed responses and replies (Dkts. 38, 39, 42). In addition to these filings, the Court heard oral argument on August 24, 2023 (Dkt. 45). Upon careful consideration, the Court grants-in-part and denies-in-part Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.[1]

---

[1] The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332. Plaintiffs are residents of Nevada, Defendant is a resident of Florida, and the amount in controversy exceeds $75,000. Dkt. 1.

## BACKGROUND

This case began when Defendant's marriage ended. Unfortunately, divorces and post-divorce relationships at times devolve into bitter personal acrimony. That is what happened when Defendant divorced Morris Owens, Plaintiff Erin Owens's father and Plaintiff LaCava's grandfather.

Upon their divorce, Defendant and Morris Owens formed a Marriage Settlement Agreement ("Agreement") that included an equitable distribution schedule for their property. Dkt. 28-2 at 8. As part of that schedule and the Agreement, Defendant took control of a 529 plan that was established during the marriage, using marital assets, for the benefit of LaCava, Defendant's former step-grandchild. *Id.* at 2; Dkt. 25-44 at 41–44. A 529 plan is a tax-advantaged savings plan used to pay for higher educational expenses, mostly to obtain an undergraduate degree at a college or university. *See generally* IRS Pub. 970 at 50–51 (Jan. 20, 2023) https://www.irs.gov/pub/irs-pdf/p970.pdf (last consulted Sept. 15, 2023); *see also* U.S. Securities and Exchange Commission, Updated Investor Bulletin: An Introduction to 529 Plans (August 31, 2023) https://www.sec.gov/about/reports-publications/investor-publications/introduction-529-plans (last consulted Sept. 15, 2023). The tax savings of the plan only apply if the funds are used for qualified educational expenses. IRS Pub. 970 at 50–51. Nonqualified expenses may be

distributed but, with a few exceptions, incur both federal income tax on the gain, plus a 10% tax penalty. *Id.* at 53.[2]

The Agreement provided that: "The Wife [Defendant] shall have sole control of the 529 Plan previously established and the assets and income of said Plan shall be used exclusively for the benefit of Alek Mickles[3] [a.k.a. Lilith LaCava]." Dkt. 28-2 at 2. As will be discussed further below, this language created a trust with one irrevocable beneficiary (LaCava) and one purpose (funding LaCava's higher education). Doc. 25-44 at 39 (Defendant: "[T]his would be used for the education of Alek Mickles [a.k.a. Lilith LaCava]."); *see also id.* at 57–59.

Regrettably, as trustee, Defendant did not overcome the personal acrimony that arose between her, Plaintiffs, and Morris Owens after the divorce. She failed to administer the trust res as a trustee must: for the exclusive trust-imposed benefit of the beneficiary.

The parties agree that Defendant had a duty to administer the 529 plan for LaCava's benefit. *Id.* at 74. In a sworn deposition, Defendant acknowledged that she owed duties of care, honesty, good faith, and fair dealing to LaCava in administering the 529 plan:

---

[2] There may be state income tax benefits that apply to the plans as well, and state tax penalties for non-qualified withdrawal.

[3] Plaintiff Lilith LaCava is formerly known as Alek Mickles.

> Mr. Kaplan: Ma'am, do you agree that you have – that you owe a duty of care to Alek [a.k.a. LaCava][4] with respect to the funds in the plan and their use?
>
> Defendant: Yes, I agree to that.
>
> Mr. Kaplan: Do you agree that you owe a duty of honesty to Alek with respect to the funds in the plan and their use?
>
> Defendant: Absolutely.
>
> . . .
>
> Mr. Kaplan: . . . Do you agree that you have a duty of good faith and fair dealing to Alek with respect to the funds in the plan and their use?
>
> Defendant: Yes.

*Id.* at 74–75. Defendant reiterated that she owed a duty of care and a duty to use good faith, good judgment, and reason in administering the 529 plan. *Id.* at 115–16. Defendant acknowledged that, in this role, she must be reasonable, not arbitrary. *Id.*

Notwithstanding, the uncontested facts also show that Defendant ceased tuition payments in derogation of a trustee's duty. From 2018 to 2021, Defendant paid LaCava's college tuition out of the 529 plan. Dkt. 25-44 at 61, 93. But in 2022, Defendant stopped payments. *Id.* at 61. Defendant stated that she stopped administering the 529 plan for LaCava's benefit because LaCava called her a derogatory name, and Morris Owens sued her in state court:

---

[4] Throughout the deposition, Defendant referred to LaCava by her former name of Alek. All deposition references to "Alek" are references to LaCava.

Defendant: I have released the funds from the 529 plan. I stopped releasing money from the 529 plan when [LaCava] called me a rotten c[expletive] because I didn't pay her room and board.

Mr. Kaplan: I thought you stopped releasing funds because you got sued?

Defendant: That followed in quick succession.

Dkt. 25-45 at 83. Defendant also testified:

Mr. Kaplan: . . . [N]ow that there's pending litigation, you also refuse to fund any of Alek's education expenses; is that correct?

Defendant: I have – until this litigation ceases and we come to some sort of conclusion, it's [in] my opinion not prudent for me to continue funding while I'm being sued by the person that I'm funding.

Mr. Kaplan: Why is it not prudent in your view?

. . .

Defendant: I'm under no obligation to fund someone that is suing me, because I'm being sued for theft . . . I have done nothing but fund this child's education for almost four years and then to find out he's still a junior, easily a year's worth of college away from graduation, and then to be told I'm a [derogatory slur] because I am not paying room and board.

Dkt. 25-44 at 66. At the same deposition, Defendant later stated, "I stopped [releasing the funds in the plan] because I'm being sued," *id.* at 68, and "I would not be funding my grandson's education if he's suing me," *id.* at 69.

Defendant also stated in deposition that she ceased payments because her ex-husband encouraged LaCava to request funding for room and board:

Mr. Kaplan: So you say that you think Morris Owens was behind the requests that you fund room and board from the 529 plan?

Defendant: Alek told me that asking for room and board – I asked him who told you to start asking me for room and board and he said Peepaw. That's how he refers to Morris Owens.

. . .

Mr. Kaplan: Okay. So Peepaw urged Alek to ask you to pay room and board and that's why you refused, right?

Defendant: That's why I refused[.]

*Id.* at 155–56. Room and board is a qualified educational expense. 26 U.S.C. § 529(e)(3)(B).

In May of 2023, LaCava graduated from the University of Hawaii, with her mother, Plaintiff Erin Owens, having paid the final three semesters' tuition, room, and board. Dkt. 27-1. LaCava plans to pursue a two-semester postgraduate program at the University of Alaska. *Id.* at 1. The program will cost $23,976. *Id.* at 2.

As of December 31, 2022, the 529 plan had a balance of $103,706.27. Dkt. 25-12 at 6. The record as to LaCava's higher education history and present plans is uncontested. Defendant has been unaware of LaCava's progress for two years, despite Plaintiffs' providing reports to Defendant's attorneys. Dkt. 25-44 at 59–63; 96; 103.

It is important to note that the December 2022 balance excludes $14,000 that Defendant moved to her personal account in 2020. Dkt. 25-45 at 34-36. Defendant

testified that she moved these funds from the trust res to purchase a car for LaCava. *Id.* But Defendant never purchased the vehicle and never moved the funds back into the 529 trust account. *Id.* The funds remain unsegregated in one of Defendant's personal accounts. *Id.*

> Defendant: . . . I took out the two seven thousand – there's two seven thousand dollar scholarships at Sierra Nevada, one towards each semester, to go toward a car for him [Alek, a.k.a. LaCava]. To my knowledge, he still hasn't gotten his driver's license. He ended up going to the University of Hawaii.
>
> Mr. Kaplan: I'm sorry. I'm not following you. Was it money that you gave to Alek during that period?
>
> Defendant: No. It's still sitting in the Fidelity account[.]
>
> . . .
>
> Mr. Kaplan: So you took fourteen thousand dollars out of the 529 Plan and put it into your individual account at Fidelity?
>
> Defendant: Yes.
>
> Mr. Kaplan: In 2020. Is that correct?
>
> Defendant: Correct.
>
> Mr. Kaplan: And that money, that fourteen thousand dollars, is still in your individual Fidelity account. Is that correct?
>
> Defendant: It's still there[.]

*Id.*

Defendant's commingling of the trust res with her personal funds became known only through discovery in this case. Defendant stated that she told LaCava

contemporaneously via text messages of her plan to use the $14,000 to purchase a car, *id.* at 36, but Defendant could produce no such texts, *see* Dkts. 25-39, 25-40, 25-41, 25-42; 25-45 at 6–8, 27, 37–38. As of the hearing before the Court on August 24, 2023, these 529 funds remained unsegregated in one of Defendant's personal accounts.

Defendant established a living trust, which specifies that any funds remaining in the 529 plan at her death be distributed to LaCava as trust beneficiary. Dkt. 28-11 at 3. The trust is revocable at any time by Defendant. *Id.* at 7–8.

Plaintiffs bring a seven-count cause of action seeking legal and equitable relief (Dkt. 1). Count I, brought by LaCava, alleges breach of fiduciary duty. LaCava, as third-party beneficiary to the Marriage Settlement Agreement, brings Counts II and III for breach of agreement and specific performance of the Agreement. Under Count IV, both Plaintiffs assert a conversion claim. Erin Owens, LaCava's mother, alleges unjust enrichment via Count V. In Count VI, LaCava requests that the Court compel Defendant to make a full accounting of the 529 funds. And in Count VII, Plaintiffs seek broad injunctive relief under the Florida Trust Code, Fla. Stat. § 736.0101 *et seq*.

## LEGAL STANDARD

A district court should grant summary judgment only when it determines that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant. *Id.* The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.*

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

## ANALYSIS

The Court grants Plaintiffs' Motion for Summary Judgment as to Counts I and VI for two uncontested factual reasons: (1) the Marriage Settlement Agreement created a trust; and (2) as trustee, Defendant breached multiple fiduciary duties. All other counts and remedies are continued to trial.

<u>The Marriage Settlement Agreement Created a Trust</u>

The Marriage Settlement Agreement created a trust by conveying the 529 funds to Defendant, to be used for LaCava's exclusive benefit. Florida law requires no particular words to create a trust. *In re Smith*, 73 B.R. 211, 213 (Bankr. N.D. Fla. 1986) (citing *Reid v. Barry*, 112 So. 846, 854 (Fla. 1927)). Instead, a trust is created when the intent to do so is "definite and particular," *McLemore v. McLemore*, 675 So. 2d 202, 205 (Fla. 1st DCA 1996) (quoting *Watson v. St. Petersburg Bank & Trust Co.*, 146 So. 2d 383, 385 (Fla. 2d DCA 1962)), and the "essential elements" are present: (1) a settlor or grantor; (2) a trustee; (3) a clearly ascertainable beneficiary; and (4) a description of the property conveyed for the trust, *id.* (citing *Reid*, 112 So. at 854; *Kunce v. Robinson*, 469 So. 2d 874, 877 (Fla. 3d DCA 1985)); *see also* Fla. Stat. §§ 736.0401–736.0402.

Here, Morris Owens and Defendant, as settlors, created a trust through the Marriage Settlement Agreement. The language of the Agreement was definite and particular: "The Wife shall have sole control of the 529 Plan previously established and the assets and income of said Plan shall be used exclusively for the benefit of Alek Mickles [a.k.a. LaCava]." Dkt. 28-2 at 2. The Agreement identified Defendant as trustee, LaCava as a clearly ascertainable beneficiary, and the 529 as the property conveyed for the trust res. The language "exclusively for the benefit of" plainly

indicated that Defendant would take possession of the 529 only to administer the funds as trustee for LaCava's benefit.

Further, the trust was not a general one. It was specifically created for LaCava's educational benefit, as the record shows. Dkt. 25-44 at 58–59. The existence and purpose of a 529 plan is to provide favorable economic treatment to savings for post-secondary educational expenses.[5] IRS Pub. 970 at 50.

The creation of a trust bound Defendant, as trustee, to several fiduciary duties, which the uncontested facts here show that she breached.

Defendant Breached Her Fiduciary Duties

A claim for breach of fiduciary duty under Florida law has three elements: (1) existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *Whittington v. Whittington*, No. 6:19-CV-1631-Orl-40DCI, 2020 WL 8224607, at *2 (M.D. Fla. Dec. 4, 2020). Florida statutes impose upon a trustee the duty to administer the trust in good faith and in the interest of the beneficiary. Fla. Stat. § 736.0801. Additionally, the trustee has duties to administer the trust prudently, § 736.0804, to avoid commingling funds, § 736.0810, and to provide an accounting of trust property to qualified beneficiaries, § 736.08135. More broadly, a trustee must not allow

---

[5] In some circumstances, not relevant here, a 529 plan may be used for secondary school tuition.

personal hostility from or towards the beneficiary to defeat the purpose of the trust. *See* Restatement (Third) of Trusts § 37 cmt. e(1).[6]

Defendant breached each of these duties. First, a trustee does not have unbridled discretion; her power is constrained by the trust instrument. *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007) ("The extent of a trustee's duties and powers is determined by the trust instrument and the rules of law which are applicable, and not by his own interpretation of the instrument or his own belief as to the rules of law.") (quotation omitted). By refusing to disperse funds for University of Hawaii tuition payments, Defendant failed to administer the trust in LaCava's best interest, considering the tax advantages of utilizing a 529 plan for its intended purpose of funding qualified educational expenses. Further, she did so in bad faith. Defendant's own deposition testimony admits that her motivations for withholding payment included offense at LaCava's alleged use of derogatory language, umbrage at Morris Owens's involvement, and frustration over the lawsuit. Dkt. 25-44 at 66, 154–59.

Additionally, Defendant breached her duty to "administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust." Fla. Stat. § 736.0804. As a 529 plan, the trust

---

[6] The Restatement teaches that there may be friction between the trustee and beneficiary. But if this friction or resentment impairs the purpose of the trust, or if there is a "serious breakdown in communication between [the] beneficiar[y] and a trustee," this may justify removal. Restatement (Third) of Trusts § 37 cmt. e(1).

res was earmarked for the specific purpose of funding LaCava's higher education. Because Defendant did not apply the funds to qualifying educational expenses, she deprived LaCava of the tax advantages that accompany a 529 plan. *See* 26 U.S.C. § 529(c)(3). This is especially true because it is uncontested that LaCava's higher education is nearing an end. Dkt. 27-1. LaCava just completed her undergraduate university education without the benefit of the 529 trust that was intended for the purpose of funding the same. *Id.* LaCava plans to begin her final two-year course of study shortly. *Id.* Over $100,000 in 529 funds sit unused for the past two years. *Id.*

Defendant's creation of a revocable living trust for the excess funds does not cure her breach. Assuming Defendant did not revoke her living trust, LaCava's eventual use of the funds for nonqualifying expenses would incur tax liability plus tax penalties. IRS Pub. 970 at 53. The unique attributes and benefits of a 529 plan cabined Defendant's discretion to administer the trust specifically in service of LaCava's higher educational pursuits, in good faith with a duty of care. The purpose of the 529 was largely thwarted by Defendant. Defendant simply did not exercise good faith judgment in furthering the goals of the 529 plan for LaCava's benefit.

Defendant hypothesized that the 529 funds should be left over or reserved for graduate school. Dkt. 25-44 at 67–68. But no factual basis exists for this hypothesis, and Defendant has not spoken to the beneficiary for two years. The uncontested record shows that LaCava's educational plans do not and will not entail graduate

school. Erin Owens, LaCava's mother, testified that LaCava plans to attend a post-graduate program at the University of Alaska:

> My daughter graduated from the University of Hawaii in May of 2023. She is planning to attend a post-graduate program in Outdoor Studies at the University of Alaska, which is her final program of study before she intends to begin serving in the US Forest Service.

Dkt. 27-1. Defendant testified that she will not disperse 529 funds for LaCava's University of Alaska tuition. Dkt. 25-44 at 103–06. It is uncontested that, once LaCava finishes her post-graduate program, her education will be complete. *Id.*; Dkt 27-1 at 1–2. There will be no further opportunity to use the trust funds for their intended purpose.

Defendant testified she stopped funding LaCava's education to force an end to the lawsuit, and for no other purpose. Dkt. 25-44 at 170–71. She contended this was in "my discretion." *Id.* at 160. But this was *not* in her discretion as a fiduciary. It was a use of her fiduciary powers for an improper purpose. Worse yet, when asked why such an act was in the beneficiary's interest, Defendant's answer showed a fiduciary duty impaired by spite:

> Mr. Kaplan: But how is your refusal to fund [LaCava's education] pending litigation in the best interest of Alek [a.k.a. LaCava]?
>
> Defendant: It's in the best interest of Alek because Alek's mother is a co-dependent bipolar former heroine [sic] addict. Alek's grandfather who had the first situation of lawsuits was also in rehab for cocaine and alcohol during our marriage. And, you know, he precipitated a lot of this litigation with his false claim that he had started the 529, which was not true.

Mr. Kaplan: Anything else?

Defendant: No.

Dkt. 25-44 at 154.

The post-divorce familial acrimony here appears on both sides. But as trustee, Defendant has a duty to ensure that personal conflict does not impact her administration of the trust. *See* Restatement (Third) of Trusts § 37 cmt. e(1). Defendant's deposition is fairly replete with examples of her severe acrimony. *See* Dkt. 25-44 at 96–99, 103, 107–109, 153–155, 158–159, 169–171, 177–178; Dkt. 25-45 at 64, 835–82, 87–88, 94–95, 98.

Defendant further breached her fiduciary duty by commingling part of the trust res with her personal funds. In 2020, Defendant transferred $14,000 from the trust res to her personal account. Dkt. 25-45 at 34–36. The transfer was identified only in case discovery, and the money remains commingled and unsegregated in Defendant's personal investment account as of the hearing on the instant motion. Dkt. 25-45 at 34–36; Dkt. 45. Defendant testified at her deposition that she intended to purchase a car for LaCava with the funds. Dkt. 25-45 at 34–36. She stated that she told LaCava of this plan in text messages but could produce no such texts. *Id.* at 37–38. Even using the $14,000 to purchase a car would breach Defendant's duty of prudent management because a vehicle is not a qualifying educational expense. *See* 26 U.S.C. § 529(e)(3). This was an educational-purpose trust—not an automotive

trust. Three years after this removal of the $14,000, no car was purchased, and the unsegregated money had not been returned to the 529. Dkt. 25-45 at 35. The removal of this money incurred tax liability on any gain—liability that would not exist if it had been used for qualified education expenses as intended. IRS Pub. 970 at 53.

Finally, Defendant breached her statutory duty to provide LaCava with a fair account of monies spent from the 529 plan. Dkt. 25-44 at 51–54. Defendant stated that she did not have a duty to account, Dkt. 25-44 at 75, but the Florida statute states otherwise, Fla. Stat. § 736.08135. And Defendant's deposition testimony showed at best a casual, partial, and incomplete set of records as to how she spent this money. Dkt. 25-44 at 82, 123–24, 127-32; Dkt. 25-45 at 27, 41. These facts are uncontested—thus the Court orders an accounting and grants Plaintiffs' summary judgment on Count VI.

While there is no genuine issue of material fact as to the existence of a fiduciary duty or Defendant's breach of that duty, there remain factual discrepancies as to the precise amount of damages owed under Count I. Thus, the Court finds that it would be premature to grant summary judgment as to damages. *See TemPay, Inc. v. Biltres Staffing*, 945 F. Supp. 2d 1331, 1350–51 (M.D. Fla. 2013) (denying summary judgment on the issue of damages where disputed issues of material fact existed as to the amount of damages due).

<u>Genuine Issues of Material Fact Exist for Other Counts</u>

Genuine issues of material fact preclude summary judgment on Counts II, III, IV, V, and VII. As to Counts II, III, and VII, the parties dispute whether the Defendant's duties require her to disperse funds for LaCava's room and board, or just her tuition. *See Moore v. Chodorow*, 925 So. 2d 457, 461 (Fla. 4th DCA 2006) ("Whether a party's failure to commit certain actions constitutes a material breach of an agreement is reviewed as a question of fact.").

Under Count IV, conversion, a genuine issue of material fact exists as to Defendant's intent with regards to the $14,000 commingled (without contemporaneous documentation) and unsegregated in her personal account. *See Utah Power Sys., LLC v. Big Dog II, LLC*, 352 So. 3d 504, 508 (Fla. 1st DCA 2022) (defining conversion as "a taking of chattels with intent to exercise over them an ownership inconsistent with the real owner's right of possession") (citation omitted). Clearly the removal of the 529 funds from the tax-favored 529 structure (to buy a car) was violative of the purpose of the trust. The undisputed facts show that the account was to fund LaCava's education, not to purchase her a vehicle (which never happened) or benefit her in some other, non-educational way. Doc. 25-44 at 39. Whether Defendant intended to convert the money permanently is a disputed issue of fact.

Similarly, factual issues preclude summary judgment on Count V, unjust enrichment. It is not clear from the pleadings what benefit Defendant, as trustee, gained by failing to dispense trust funds—other than an exercise in pique, which is clear from this record. *E.g.,* Dkt. 25-44 at 177; *see CFLB Partnership, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359 (Fla. 3d DCA 2022) ("The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.") (quotation omitted).

<u>Defendant's Motion for Summary Judgment Is Denied</u>

Defendant moved the Court for summary judgment on four grounds: (1) the settlement agreement did not place the 529 plan into a trust; (2) the state divorce court judgment against Morris Owens precludes Count II; (3) LaCava had no possessory interest in the 529 funds; and (4) Erin Owens, LaCava's mother, did not confer a benefit on Defendant by paying LaCava's undergraduate tuition when Defendant stopped. The Court will address each argument.

First, Defendant argues that she evinced no intent to create a trust via the 529 plan. Dkt. 28 at 6–7. She argues that, when forming the 529 account years ago, she could have established the 529 plan as a "trust" but elected the individual account

option on the brokerage account opening papers. *Id.* at 6. Further, she points to her establishment of her living trust as evidence that she knows how to create a trust when she intends to do so. *Id.* at 7. Each of these arguments ignores that the trust was not created when Defendant opened the brokerage account for the 529 plan, but when Defendant and Morris Owens formed the Marriage Settlement Agreement. Under that Agreement, Defendant agreed to manage the educational funding account for the exclusive benefit of LaCava, admittedly with a duty of care, good faith and judgment, and reason.

Next, the earlier state divorce court proceeding between Morris Owens and Defendant does not preclude Plaintiffs' claims. Collateral estoppel under Florida law requires that: "(1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to the parties of the current proceeding; and (5) the issue was actually litigated." *Thakkar v. Good Gateway, LLC*, 351 So. 3d 192, 195 (Fla. 5th DCA 2022) (quotation omitted); *see also Comm. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) (noting that federal courts must apply state preclusion law when considering whether to apply collateral estoppel based on a state-court judgment). Here, most of these elements are not met. Neither plaintiff was party to the divorce proceedings. The state court did not address the commingling of funds, because that

19

issue only came to light through the present case discovery. *See generally* Dkt. 32-1. Accordingly, the identical issue was not presented as a critical and necessary part of the state court hearing. Nor was the commingling litigated after a full and fair opportunity to do so.

As to Count IV, conversion, LaCava did have an interest in the 529 funds, because the 529 plan constituted the trust res, to be administered for her sole benefit. Fla. Stat. § 736.0103(4). And under Count V, unjust enrichment, genuine issues of material fact exist as to whether Plaintiffs conferred a benefit that was voluntarily accepted by Defendant.

## CONCLUSION

For the reasons stated above, the Court grants-in-part and denies-in-part Plaintiffs' Motion for Summary Judgment (Dkt. 29) and denies Defendant's Motion for Summary Judgment (Dkt. 28). Upon conclusion of this matter, the Court will enter final judgment in favor of Plaintiff as to Count I (Breach of Fiduciary Duty) and Count VI (Accounting). The Court finds that there are still issues of material fact that preclude summary judgment for Counts II, III, IV, and V, so summary judgment will be denied as to these counts. Those counts and the damage issues remain for trial should the issues still be at impasse.

**DONE AND ORDERED** at Tampa, Florida, on September 15, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record